Battle, J.
 

 This case depends upon the proper construction of the act of 1852, ch. 169, entitled, “ An act to bring into market the lands pledged for the completion of the Western Turnpike Eoad.” See pamphlet acts of 1852, p. 616.
 

 The first section of this act provides for the opening of an entry-taker’s office, and the election of an entry-taker in the County of Cherokee; and the second authorises the entry of the unsold lands in that County, at certain rates therein specified. The third section declares “ that it shall be lawful for all enterers of vacant land in said County of Cherokee, to file their bonds, with approved security, with the entry-taker, payable to the State in four equal annual instalments, which shall, when paid, be in full of the purchase money, for the tract or tracts so entered; and, upon proof of such payment as herein provided, the Secretary of State shall issue the grant or grants according to the entry and survey thereon,” &c. The fifth section enacts “ that all the vacant lands in the Counties of Macon and Haywood may be entered under the provisions of this act at the present rates, and all the land in the said Counties heretofore entered and not paid for, may be paid for as herein provided for the lands lying in Cherokee County, and all the money and bonds that may be received by the
 
 *490
 
 entry-taker of either of the said Counties of Cherokee, Macon and Haywood, shall be paid to contractors for making the said Western Turnpike Road, on the certificate of the agent for making the said road, until the same is completed.” It is unnecessary to notice the other sections of the act, as they have no bearing upon the case.
 

 The object of this act is manifest. The Western Turnpike Road had been commenced, and it was necessary to provide means for ¡raying the contractors. Eor this purpose, certain unsold lands, lying in the Counties of Cherokee, Macon and Haywood, through which the road passed, were directed to be brought into market. To enhance the price, they were allowed to be taken up by the purchasers, and bonds payable to the State in four equal annual instalments, were to be filed with the entry-taker. These bonds, together with all monies which they might receive, these entry-takers were required to pay to the contractors upon the turnpike road. To enable them to perform this duty, they must have the power to demand from the onterers, the bonds which they were required to give. Tire act does not declare in express terms that the bond must be filed with the entry-takers at the time when the entries are made, nor does it specify any other time. The relator contends that the bonds were not to be filed until surveys could be made, so as to ascertain the precise amount to be paid. We cannot adopt this construction, because it would, in a great measure,, defeat the main purpose of the act. If the enterors of the lands were to be governed by the general law concerning entries and grants, the delay in having the surveys made, and then the credit upon the bonds for the purchase money would very materially diminish the value of the funds which the act intended to provide for the payment of the contractors upon the road. The provision for the payment of the bonds and money to the entry-taker, instead of into the public treasury, and that such bonds and money should be paid out by the entry-takers, shows that dispatch in the collection of a fund for the contractors was intended. The same policy would require that the bonds should be filed
 
 *491
 
 with the entry-takers, at the time when the entries were made; and the third section of the act is clearly susceptible of that construction. The bonds might be in a penal form, until the surveys should be made to ascertain the exact quantity of land, and then it would be the interest of the enterers to have the surveys made before the bonds became due, so that they might not be compelled to pay too much. Upon the whole, we are of the opinion that the entry-taker did not, in the present case, commit any breach of his official bond, by refusing to take the entry of the relator until he should file his bonds for the purchase money of the land, as required by the third section of the act in question.
 

 The judgment against the defendants must be reversed, and a
 
 venire'de novo
 
 awarded to them.
 

 Per Curiam.
 

 Judgment reversed.